UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BERNADETTE WADE,

    Plaintiff,                  Civil Action No. 16-10042
                                   Honorable Arthur J. Tarnow
       v.                      Magistrate Judge Elizabeth A. Stafford

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

    Defendant.
_____/

**REPORT AND RECOMMENDATION ON CROSS-**
**MOTIONS FOR SUMMARY JUDGMENT [ECF. NO. 15, 17]**

Plaintiff Bernadette Wade appeals a final decision of defendant Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits ("DIB") and Supplemental Security Income Benefits ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions, referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court **RECOMMENDS** that:

- the Commissioner's motion [ECF No. 17] be **GRANTED**;

- Wade's motion [ECF No. 15] be **DENIED**; and

- the Commissioner's decision be **AFFIRMED**, pursuant to sentence

four of 42 U.S.C. § 405(g).

## I. BACKGROUND

### A. Wade's Background and Claimed Disabilities

Born July 14, 1960, Wade was 52 years old when she submitted her applications for disability benefits on October 30, 2012. [ECF No. 10-5, Tr. 126]. She has a tenth grade education, and past relevant work as a chip sorter and housekeeper. [ECF No. 10-2, Tr. 20; ECF No. 10-6, Tr. 147]. Wade alleged that she is disabled by injury to her left leg and foot, and her lower back, as well as by hyperlipidemia, high blood pressure, and depression, with an onset date of August 10, 2010. [ECF No. 10-6, Tr. 142, 146]. For DIB purposes, her date late insured was March 31, 2013. [ECF No. 10-2, Tr. 16].

After a hearing on June 17, 2014, which included the testimony of Wade and a vocational expert ("VE"), the ALJ found that Wade was not disabled. [ECF No. 10-1, Tr. 14-20, 25-66]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. [*Id.*, Tr. 1-4]. Wade timely filed for judicial review. [ECF No. 1].

### B. The ALJ's Application of the Disability Framework Analysis

DIB and SSI are available for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). A "disability" is the

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[1] Second, if the claimant has not had a severe impairment or a combination of such impairments[2] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity, and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC,

---

[1] Sections 1520(a)(4) and 920(a)(4), which pertain to DIB and SSI respectively, list the same five-step analysis.
[2] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." § 1520(c); § 920(c).

3

age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Wade was not disabled. At step one, he found that Wade had not engaged in substantial gainful activity since her alleged onset date. [ECF No. 10-2, Tr. 16]. At step two, he found that Wade had the severe impairments of "degenerative changes of the left knee, lumbar facet arthropathy, degenerative changes of the left foot, hypertension, and gallstones." [*Id.*]. At step three, the ALJ concluded that none of her impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*, Tr. 17].

Between the third and fourth steps, the ALJ found that Wade had the RFC to perform the full range of light work.[3] [*Id.*]. At step four, the ALJ

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b) and 416.967(b).

4

found that Wade could perform her past relevant work as a chip sorter and housekeeper, and was thus not disabled. [*Id.*, Tr. 19].

## II. STANDARD OF REVIEW

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

The Commissioner must also adhere to its own procedures, but failure to do so constitutes only harmless error unless the claimant has been prejudiced or deprived of substantial rights. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). An ALJ's failure to use an "adjudicatory tool" that does not change the outcome of the decision is harmless. *Id.* at 655-56. On the other hand, substantial errors like ignoring

evidence in the record or failing to follow the treating physician rule are not harmless. *Id.*; *Gentry*, 741 F.3d at 723, 729; *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011).

### III.  ANALYSIS

Wade takes issue with the ALJ's credibility, arguing that he did not give proper weight to her complaints of pain; she argues that the ALJ did not properly assess her RFC; and she argues that the ALJ's decision is not supported by substantial evidence. These arguments are without merit, and the decision of the ALJ should be affirmed.

### A.

The ALJ found that Wade's allegations of extreme limitations of function were not supported by the record, and therefore not fully credible. [ECF No. 10-2, Tr. 18]. The relevant medical record shows that, in August 2010, Wade sought emergency room treatment for a left knee strain or sprain. [ECF No. 10-7, Tr. 269-71]. She had previously had right ankle surgery[4] and, when she felt that she was about to fall, she put all of her weight on her left knee. [*Id.*]. Wade was ambulating with great difficulty but the x-rays were negative, and she was given two Norco pills for pain and released in stable condition. [*Id.*]. An x-ray of the left knee in

---

[4] As documented below, the injury to her right ankle was in 2002.

6

September 2010 revealed a "very small bony chip." [*Id.*, Tr. 218]. In August 2010, Wade returned to the emergency room complaining of left side chest pain. [*Id.*, Tr. 198-200]. She received an EKG and ECG, which showed some abnormalities. [*Id.*, Tr. 199, 222]. Her musculoskeletal examination showed full strength, but she grimaced in pain with light touches to her shoulders, chest wall and back. [*Id.*]. She was diagnosed with atypical chest pain and musculoskeletal pain, administered Toradol intravenously, and released with a prescription of Motrin. [*Id.*].

Treating physician Pramod Raval, M.D., whose treatment notes are difficult to decipher, indicated in October 2010 that Wade was walking with crutches because of a left foot contusion – the first mention of a foot injury – with no mention of her knee. [*Id.,* Tr. 220]. A CT scan of Wade's knee in November 2010 revealed no fracture, but did show chondromalacia of patella (cartilage damage) and moderate degenerative changes. [ECF No. 10-7, Tr. 279]. But Dr. Raval's note from December 2010 referred to "fracture leg," and he prescribed Naprosyn and Vicodin, and referred her to an orthopedic doctor; the appointment was scheduled for February 2011. [*Id.*, Tr. 214]. Wade did not go to that appointment, and she does not explain why. She did go to physical therapy for her left foot, only to stop in March 2011 because it was not working. [*Id.*, Tr. 293-94]. The physical

7

therapy notes stated that her foot was not broken, that putting weight on her left foot caused her too much pain, and that she had a limited range of motion of her left ankle and walked with an antalgic gait. [*Id.*].

Wade saw Theodore Densley, M.D., on February 2012. He diagnosed her with chronic left foot pain, but also opined, "[D]rug seeking behavior suspected due to patient lying about her injury and condition." [*Id.*, Tr. 228]. When Wade was treated by Mary Jackson-Hammond, M.D., in March 2012, she stated that she pulled ligaments in her left knee when falling on a sidewalk in front of a neighbor's home in 2010. [*Id.*, Tr. 243]. Dr. Jackson-Hammond referred Wade for x-rays of her left knee and foot and for orthopedic treatment, and refilled her Vicodin. [*Id.*]. At Wade's August 2012 appointment, Dr. Jackson-Hammond noted that Wade fell when walking downstairs in her home in 2010 and turned her knee pad. [*Id.*, Tr. 239]. Wade said that Vicodin helped her with the pain, and added that she had back pain too. [*Id.*]. Dr. Jackson-Hammond again referred Wade for radiology and orthopedic treatment, [*id.*], but there is no indication that Wade followed through with either referral.

Following her application for disability benefits, Wade was evaluated by Cynthia Shelby-Lane, M.D. in March 2013. [ECF No. 10-7, Tr. 261-67]. She alleged disability due to injury to left leg and foot, hypertension,

hyperlipidemia, back pain, depression. [*Id.*, Tr. 261]. Wade said that she had fractured her left great toe in 2011 but had no orthopedic treatment, and recounted her history of right ankle injury and fracture in 2002. [*Id.*, 261, 263]. She alleged to have chronic back pain secondary to trip and fall, and to a lifting injury in 2002, but she had no treatment for her back. [*Id.*, Tr. 261, 263]. Her straight leg raising test was positive lying down, but negative when sitting. [*Id.*, Tr. 262]. Wade told Dr. Shelby-Lane that she had hypertension that was controlled with her current drug regimen, and hyperlipidemia for which she was taking no medication. [*Id.*, Tr. 261, 263]. She reported being diagnosed with mild depression, but with no follow up treatment. [*Id.*, Tr. 262-63].

    Dr. Shelby-Lane found that Wade was in no acute distress, and observed that she did not use a cane or aid for walking, but had a slight limp on the right. [*Id.*, Tr. 262-63]. Her stance was normal, and her tandem, heel, and toe walking were done slowly. [*Id.*, Tr. 263]. Wade had no neurological abnormalities, and her high blood pressure was under fair control on her current drug regimen. [*Id.*]. Her ranges of motion were all normal except forward flexion, and her reflexes were all normal. [*Id.*, 264-65]. Dr. Shelby-Lane identified no limitations under a section pertaining to "current abilities," and though she indicated that Wade had a compensated

gait, Dr. Shelby-Lane opined that she did not need a walking aid. [*Id.*, Tr. 267].

Records reviewer B.D. Choi, M.D., reviewed Wade's medical history in April 2013 and concluded that she had an RFC for light work. [ECF No. 10-3, Tr. 71-76].

In June 2013, Wade again sought treatment at the emergency room, this time complaining of back pain. [ECF No. 10-7, Tr. 298-301]. A CT scan identified no acute abnormality. [*Id.*, Tr. 308]. She was diagnosed with "acute lumbar sprain/strain lumbago," and released in stable, improved condition. [*Id.*, Tr. 298-301]. Almost a year later, Wade returned to the emergency room complaining of lower abdominal pain, which was found to have gallstones. [*Id.*, Tr. 334, 344, 351]. Radiological examinations of the lumbar spine and chest revealed "mild" and "slight" abnormalities, and facet arthropathy throughout the lumbar spine. [*Id.*, Tr. 344-45]. A June 2014 imaging examination of her left foot revealed no acute fracture or dislocation, and mild degenerative changes in her first metatarsophalgeal joint, possible benign dystic change and mild soft tissue swelling. [*Id.*, Tr. 370]. The following month, a podiatrist opined that Wade had an antalgic gait due to hallux rigidus (stiff big toe) and might require surgery, but did

not fill out any portion of the form letter that pertained to functional limitations. [*Id.*., Tr. 374].[5]

At the hearing, Wade testified that she cannot work because her feet, leg, stomach and back bother her. [ECF No. 10-2, Tr. 36]. She said that she has sharp pains in her left knee, foot and toe. [*Id.* at Tr. 38]. Wade also testified that her right ankle, which was surgically repaired in the 1980s with screws and a rod, "gets real sore" (even though she did not include her right ankle in her claim of disability). [*Id.,* Tr. 38-39]. She described experiencing daily pain in her abdomen and back, and said that it had been getting worse. [*Id.*, Tr. 40-41]. Wade stated that, after being diagnosed with depression, she did not take the prescribed medication for long because it did not help and she did not see a psychiatrist. [*Id.*, Tr. 45]. She said that she took Norco and Naproxen for the pain, a muscle relaxant and Norvasc for her blood pressure, and that those medications made her drowsy and sleepy. [*Id.,* Tr. 45-48].

Wade testified that she lived with her daughter who helped clean, cook and wash, and went shopping for her, and that her son did yard work. [*Id.*, Tr. 50]. After Wade woke up in the morning, she would take her

---

[5] Wade also cites to an imaging study that was performed in November 2014, but that was after the ALJ's August 2014 decision.

medication, her daughter would make her breakfast, she would watch a little TV and then she would go back to sleep. [*Id.*, Tr. 51]. Wade said that she used to enjoy reading but that now her vision was blurry, but she had not gone to an eye doctor. [*Id.*].

At first, Wade said that she could not sit or stand for more than 15 minutes, and she could lift no more than five or six pounds. [*Id.*, Tr. 52-54]. But then she testified that she could sit for a half hour or two hours. [*Id.,* Tr. 54-55]. Wade said that she could walk a half block and that she had been prescribed a cane, but it had broken a few months before and she had not replaced it, and she did not use it all of the time anyway. [*Id.*, Tr. 55-56]. She did not go to church and had no hobbies outside of the house since she could no longer bowl or play pool; she had to lay down during the day even on her good days. [*Id.,* Tr. 52-53]. Wade also said that she needs help putting on her pants and shoes and bathing in a tub, and that she has trouble with concentrating and paying attention. [*Id.*, Tr. 57-58].

The ALJ found that the x-rays, CT scans and clinical examinations in the record did not account for Wade's allegations of extreme limitations in functioning. [*Id.*, Tr. 18]. He described the medical records indicating that she had been found to have full ranges of motion except a slight reduction in her lumbar spine, that she could walk without an assistive device, albeit

hesitantly and slowly, and that her straight-legging raising tests were inconsistent. [*Id.*]. The ALJ noted that Dr. Densley suspected Wade of being drug-seeking, and that she never followed up on her referrals for orthopedic treatment, suggesting that she was not as limited as alleged. [*Id.*, Tr. 18-19]. The ALJ opined, "Given the extreme nature of the claimant's allegations, including an inability to dress herself or care for her basic activities of daily living, one would expect to find more limitations observed in her clinical examinations, as well as severe or marked findings on objective testing." [*Id.*, Tr. 19].

Credibility determinations of witnesses are within the province of the ALJ and should not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). At the same time, "such determinations must find support in the record." *Rogers*, 486 F.3d at 241. Wade argues that the ALJ's credibility was flawed because the ALJ did not give "deference" to her complaints of pain, and that it lacked sufficient specificity. But the ALJ was not required to give deference to Wade's allegations, and he did provide specific reasons for his credibility determination – reasons that found support in the record. Wade also argues that ALJ's decision was inconsistent with the objective evidence, but remand is not warranted based on this argument.

First, while Wade argues that the ALJ did not sufficiently consider her chondromalacia of patella and osteoarthritis in the sacroiliac joint, Dr. Choi had the benefit of the CT scan showing the chondromalacia and moderate degenerative changes in Wade's knee when opining that Wade could perform light work, and Wade only once sought treatment for her back pain. Wade faults the ALJ for not considering her pain from her right ankle injury, but she did not identify that as a cause of her alleged disability when applying for disability benefits, and she sought no treatment for that old injury during the relevant period.

Wade also argues that the ALJ failed to consider her lack of medical coverage even though her attorney stated during the hearing that she had just recently obtained full Medicaid. [ECF No. 10-2, Tr. 48]. But there is no indication in the record that her insurance coverage hindered her ability to obtain treatment; the only reference to insurance issues is Wade's attorney's statement during the hearing that her prior insurance "didn't have coverage for anything." [*Id.*]. Yet in her brief here, Wade stated that she was covered for a primary physician who was allowed to make referrals to medical specialists. [ECF No. 15, PageID 498]. And in fact Wade was scheduled for an appointment with an orthopedic doctor for February 24,

2011, at 8:15 a.m., and she has not explained why she did not show for that appointment. [ECF No. 10-7, Tr. 214].

Wade also argues that the ALJ took medical source statements out of context and that her disability application paperwork is fully consistent with her testimony. [ECF No. 15, PageID 499-500, citing ECF No. 10-6, Tr. 173, 175, 178-79]. But this Court's job is not to reweigh the evidence and consider other possible interpretations. "If the Secretary's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations and internal quotation marks omitted). Here, the ALJ cited specific reasons that were supported by the record for determining that Wade's allegations were not fully credible, so his decision should be affirmed.

**B.**

Wade also argues that her RFC was not properly formulated and that the ALJ's decision was not support by substantial evidence, but these arguments are really continuations of her challenge to the ALJ's credibility determination. She argues that the ALJ failed to account for the degenerative changes of the left knee and foot, lumbar facet arthropathy,

15

hypertension, gall stones, right ankle injury, sacroiliac joint arthritis, pelvic pain, and lack of ability to obtain medical treatment. Wade asserts that the ALJ should have imposed a sit/stand option and questioned the vocational expert regarding whether Wade can perform her past relevant work with that option. But when formulating an RFC, an ALJ is required only to incorporate those limitations he finds credible. *Irvin v. Social Security Administration*, 573 F. App'x 498, 502 (6th Cir. 2014) (citing *Casey v. Secy' of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).

Wade's argument also conflates her diagnoses with functionality; a diagnosis says nothing about its disabling effects. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (mere diagnosis of arthritis without doctors reports documenting "any limitation of joint motion, as well as the intensity, frequency, and duration of arthritic pain," is insufficient to establish severe impairment). Here, the ALJ relied upon Dr. Choi's opinion to determine that Wade could perform light work. [ECF No. 10-2, citing ECF No. 10-3, Tr. 71-77]. Dr. Choi rendered that opinion after considering Wade's medical records, her left leg, foot and back pain, her reduced range of motion, and her walk with a limp. [*Id.*]. In addition, after examining Wade, Dr. Shelby-Lane identified no limitations under a section pertaining to "current

abilities," and opined that Wade did not need a walking aid. [*Id.*, Tr. 266]. No other medical provider offered an opinion concerning Wade's RFC.

Under these circumstances, the ALJ's assessment of Wade's RFC and his decision finding her not disabled are supported by substantial evidence.

### III. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that the Commissioner's motion [ECF No. 17] be **GRANTED**; that Wade's motion [ECF No. 15] be **DENIED**; and that the Commissioner's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

Dated: January 30, 2017

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but

fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 30, 2017.

> s/Karri Sandusky on behalf of
> MARLENA WILLIAMS
> Case Manager